UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

      Plaintiff,

                           Criminal No. 17-20519

v.

                           Honorable David M. Lawson

STEVEN D. GILMORE,

      Defendant.

_____/

### United States' Response Opposing the Defendant's
### Motion for Compassionate Release and Supplemental Brief

Steven Gilmore is serving two federal sentences. In 2017, he pleaded guilty to a

firearms offense and was sentenced to 66 months in prison by Judge Paul D. Borman

(E.D. Mich. Case No. 16-20490). While at the Federal Detention Center in Milan

awaiting designation to a Bureau of Prisons facility, Gilmore assaulted a fellow

inmate. He pleaded guilty to assault resulting in serious bodily injury and the Court

sentenced him to 31 months in prison, consecutive to his other federal sentence.

Gilmore began serving his first sentence on June 4, 2018, though he received

credit for his pretrial detention. He now moves for compassionate release under 18

U.S.C. § 3582(c)(1)(A).

According to the Bureau of Prisons, Gilmore is still serving his first sentence,

and will not begin to serve his sentence in this case until February 28, 2021. As a

result, Gilmore's motion in this case is premature, as the Court cannot grant

compassionate release in a case where the defendant has not yet begun serving a sentence. *United States v. Wright*, No. 17-20334, ECF No. 42 (E.D. Mich. July 15, 2020) (staying compassionate release motion until defendant completes serving prior federal sentence in another case). While the Court could deny relief or stay the case on this basis, the government is opposing release on the merits, rather than seeking a stay, given that Gilmore will begin serving his sentence in this case only two weeks after the government files its brief.

Gilmore's motion should be denied because he does not satisfy the statutory, substantive requirements for compassionate release. "[T]he mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Even assuming a defendant facing a heightened risk from Covid-19 could demonstrate "extraordinary and compelling reasons" for release, Gilmore does not have a chronic condition that places him at increased risk for severe complications from Covid-19. His reasons for release – epilepsy, Hepatitis C, and a history of a drug-induced heart attack (myocardial infarction) – are therefore not "extraordinary and compelling," particularly given that he has now received both doses of the Moderna vaccine. (Ex. A at 6). Further, the factors under 18 U.S.C. § 3553(a) do not support release because of his criminal history, circumstances of his current offenses, prison disciplinary record, and long remaining sentence.

The Court should deny Gilmore's motion for compassionate release.

## Background

On May 1, 2017, Gilmore was detained at FDC Milan after having been sentenced to 66 months on federal firearm charges. For reasons that remain unclear, Gilmore approached a fellow inmate who was watching television and viciously attacked him. Gilmore punched his victim at least two times in the face, causing him to fall to the ground. After he was on the ground, Gilmore punched him again at least one time and kicked him at least two times. The victim received immediate medical treatment at FDC Milan. Later, he was sent out to a hospital for a CT scan. He suffered extensive injuries, including a broken orbital bone around his right eye, multiple fractures of his nasal bone and sinus, and lacerations on his face and inside his mouth that required stitches.

He pleaded guilty to assault resulting in serious bodily injury. The Court sentenced him to an additional 31 months.

Gilmore began serving his first prison sentence on June 4, 2018, he is expected to begin serving his second sentence on February 28, 2021, and he is incarcerated at US Penitentiary Victorville, a high security prison in California. He is 27 years old, and his projected release date is September 12, 2023. His only underlying medical conditions are epilepsy, Hepatitis C, and a history of a drug-induced heart attack. Nevertheless, Gilmore has moved for compassionate release, citing his medical conditions and the Covid-19 pandemic.

**Argument**

I.    **The Bureau of Prisons has responded to Covid-19 by protecting inmates and instituting the administration of the vaccine at its facilities.**

The Bureau of Prisons has reacted quickly to confront Covid-19's spread within its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). For over almost a decade it has maintained a [detailed protocol](#) for responding to a pandemic. Contrary to Gilmore's arguments (ECF No. 39, Motion, PageID.204-213), and consistent with its protocol, the Bureau of Prisons began planning for Covid-19 in January 2020, and has repeatedly revised its plan. *Wilson*, 961 F.3d at 833–34. By this point, the Court is aware of the Bureau of Prisons' efforts. [BOP Covid-19 Modified Operations Website](#).

Most recently, the Bureau of Prisons has begun vaccinating inmates and prison staff. As of February 15, 2021, the Bureau of Prisons has acquired more than 43,000 doses of the Covid-19 vaccine. *See* [CDC Covid-19 Vaccine Tracker (Vaccinations in the United States)](#) and [BOP COVID-19 Vaccination Implementation.](#) The Bureau of Prisons has already initiated the first dose of the vaccine in more than 29,000 of staff members and inmates. *See* [CDC Covid-19 Vaccine Tracker](#) and BOP COVID-19 Vaccination Implementation[.](#) While the precise timing of each inmate's vaccination will depend on many factors, the Bureau of Prisons is working to vaccinate inmates who consent to receive the vaccine.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from Covid-19 completely, despite its best efforts. For example, Gilmore tested negative for Covid-19 several times in 2020. (Ex. A at 13-20). On January 5, 2021, Gilmore was tested again. (*Id*. at 8). On January 8, 2021, Gilmore received the first dose of the Moderna Covid-19 vaccine – but unfortunately his Covid-19 test came back positive. (*Id*. at 2, 6, 8). Gilmore was quarantined, monitored daily, appears to have not experienced significant symptoms, and was released from quarantine having recovered on January 22, 2021. (*Id*. at 1, 3-4). A chest x-ray from January 14, 2021, revealed that he had "[n]o acute cardiopulmonary disease" and that his "[l]ungs are clear" and his "[h]eart size within normal limits." (*Id*. at 10). Gilmore received the second dose of the vaccine on February 3, 2021. (*Id*. at 6).

Going forward, the Bureau of Prisons' measures will help federal inmates remain protected from Covid-19 and ensure that they receive any required medical care.

## II.     The Court should deny Gilmore's motion for compassionate release.

Gilmore's motion for a reduced sentence should be denied. A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been

5

imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A).

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020). Those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

## A. Gilmore has satisfied the statutory exhaustion requirement.

Gilmore satisfied the exhaustion requirement because he filed his motion after the warden denied his request under § 3582(c)(1)(A).

## B. Gilmore has not shown "extraordinary and compelling reasons" for compassionate release.

Resolving the merits of a compassionate-release motion involves a "three-step inquiry": a district court must (1) "find that extraordinary and compelling reasons

6

warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *United States v. Elias*, ___ F.3d ___, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021); 18 U.S.C. § 3582(c)(1)(A). In *Elias*, the Sixth Circuit held that USSG § 1B1.13 is not an "applicable" policy statement for defendant-initiated motions for compassionate release, so there is no policy statement to analyze under the second prong of the *Elias* test.

Gilmore has not satisfied the statutory requirement of showing that "extraordinary and compelling reasons" warrant a sentence reduction. That statutory requirement means that a defendant's reasons for release must satisfy two strict criteria. 18 U.S.C. § 3582(c)(1)(A)(i). The defendant's reasons must be "extraordinary"—meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). The reasons must also be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. A defendant must establish both criteria to satisfy the statute's eligibility threshold. Gilmore has satisfied neither.

*First*, Gilmore's reasons for release are not "extraordinary." *Everyone* in our society faces a risk from Covid-19 right now. Over 400,000 Americans have now

died from this terrible disease. So as the Sixth Circuit has stressed, "generalized fears of contracting Covid-19, without more," do not justify compassionate release. *United States v. Jackson*, 2020 U.S. App. LEXIS 32269, at *6 (6th Cir. Oct. 13, 2020); *accord United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020); *United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). The Bureau of Prisons has also worked diligently to implement precautionary measures reducing the risk from Covid-19 to Gilmore and other inmates. *See Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). Thus, while those efforts do not always succeed, "the mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *cf. Wilson*, 961 F.3d at 845.

Because Gilmore does not have a chronic condition that the CDC has confirmed will cause him to face an increased risk of severe illness from Covid-19, and because he has received both doses of the Moderna vaccine, his reasons for release are not "extraordinary" and instead present only a "generalized fear[] of contracting Covid-19." *Jackson*, 2020 U.S. App. LEXIS 32269, at *6. The Sixth Circuit has upheld a district court's reliance on the CDC's guidance during the Covid-19 pandemic. *Elias*, 2021 WL 50169, at *4. The CDC maintains a list of conditions that are known to place someone at a higher risk of severe illness from Covid-19. *See* CDC Risk

Factors (as updated) (identifying the confirmed medical conditions that increase someone's risk from Covid-19). Gilmore does not have one of those conditions.

Gilmore claims that he suffers from epileptic seizures, Hepatitis C, and a history of a drug-induced heart attack, and that those conditions constitute "extraordinary and compelling reasons" for release. (ECF No. 39, Motion at PageID.214-218; ECF No. 45, Supplemental Brief, PageID.232-33 & 236). The government disagrees.

Epileptic seizures: While Gilmore has a medical history that includes epileptic seizures and is prescribed medication for this condition, the CDC does not identify this condition as one that places a person at increased risk of severe illness. (Ex. A at 5, 7, 11, 21; CDC Risk Factors (as updated)).

Hepatitis C: Gilmore has been diagnosed with Hepatitis C. (Ex. A. at 5, 11, 24-26). Even so, he does not argue that he needs any treatment for this condition, and his medical records indicate that he has receive "no prior tx." (*Id*. at 11). Also, Hepatitis C is not a confirmed condition that increases a person risk for severe illness. According to the CDC, while having "chronic liver disease, such as alcohol-related liver disease, nonalcoholic fatty liver disease, and especially cirrhosis (scarring of the liver), might increase your risk for severe illness from Covid-19," the CDC does not include Hepatitis C in its list of liver disease-related conditions that "might" increase a person's risk. CDC Risk Factors, Liver disease.

Drug-induced heart attack: Gilmore's medical records indicate that he has a past history of a heart attack. (Ex. A at 5 & 11). Consistent with Gilmore's young age

9

and drug abuse history, Gilmore admits that his heart attack was related to past drug use, not a heart condition. (ECF No. 45, Supplemental Brief, PageID.233). Given that his heart attack was drug-induced, Gilmore does not have a heart condition that increases a person's risk of severe illness from Covid-19, which include heart failure, coronary artery disease, cardiomyopathies, and pulmonary hypertension. CDC Risk Factors, Heart Conditions.

Gilmore's medical conditions, even when considered alongside the Covid-19 pandemic, do not rise to the level of an "extraordinary" circumstance. And they particularly do not do so for another reason: Gilmore has immunity to the virus. For one, he already recovered from Covid-19, meaning a study published in the Washington Post suggests that he has immunity for at least 8 months. (Ex. A at 2-4). More importantly, he has received both doses of the Moderna vaccine, meaning he is more protected from the risk of severe illness from Covid-19. (Ex. A at 6).

*Second*, Gilmore's reasons for release are not "compelling." In the pretrial-release context, the Sixth Circuit has already addressed what qualifies as a "compelling" reason for release based on Covid-19. *United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020); *Bothra*, 2020 WL 2611545, at *2. That analysis considers (1) the "original grounds" for the defendant's incarceration; (2) the "specificity" of his "stated Covid-19 concerns"; (3) the extent to which the proposed release plan would "mitigate or exacerbate" his risk from Covid-19; and (4) the risk from Covid-19 that his release would pose to

others. *McGowan*, 2020 WL 3867515, at *2. In *Bothra*, for instance, the defendant was in his 70s and "had health issues rendering him more vulnerable to contracting [Covid-19]." 2020 WL 2611545, at *2. But he was a flight risk, had orchestrated a large and complex fraud scheme, and was detained at a facility that had very few cases of Covid-19. *Id.* The Sixth Circuit thus held that his circumstances did not present a "compelling" reason for release. *Id.*

Gilmore's circumstances are even less compelling. The "original grounds" for Gilmore's incarceration in this case were his assault of a fellow inmate while in prison on a federal weapons charge. *McGowan*, 2020 WL 3867515, at *2. His conviction for this offense, especially when combined with criminal record, showed that Gilmore required a sentence of 31 months in prison consecutive to his 66 month sentence on the firearms charge. And unlike the pretrial defendant in *Bothra*, Gilmore was *convicted* of his offense here—not just accused of it. So the justice system's "essential" interest in finality weighs far stronger against Gilmore's release than it did in *Bothra*. *Teague v. Lane*, 489 U.S. 288, 309 (1989).

Gilmore cannot show extraordinary and compelling reasons for release.

## C. The factors in 18 U.S.C. § 3553(a) strongly weigh against compassionate release.

Even when an inmate has shown "extraordinary and compelling reasons," he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is

appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same).

This Court's "initial balancing of the § 3553(a) factors during [the defendant's] sentencing" is presumed to "remain[] an accurate assessment as to whether those factors justify a sentence reduction." *United States v. Sherwood*, 2021 WL 345405, at * 2 (6th Cir. Feb. 2, 2021). The defendant must therefore "make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today." *Id.* Here, even if the Court were to find that Gilmore established extraordinary and compelling reasons for his release, the § 3553(a) factors should still disqualify him.

For starters, Gilmore's long remaining sentence weighs heavily against release. The Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's

12

evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008. While Gilmore has served a large percentage of his total combined sentence, he has not yet even begun to serve any of his 31-month sentence imposed by the Court here, and he will not begin to serve that sentence until February 28, 2021, according to the Bureau of Prisons. Gilmore's entire remaining sentence weighs against release.

The plain language of the compassionate-release statute makes the point even more directly: it requires that the defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). That inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, requiring him to justify the magnitude of his requested sentence reduction. *Id.* So a defendant with basically his entire sentence remaining, like Gilmore, must show that his reasons for release are so powerful that they "warrant" a "reduction" of that size. *Id.* He has not done so.

The other § 3553(a) factors also weigh against granting Gilmore's motion. Both of his sentences were serious offenses. In the case before Judge Borman, Gilmore pleaded guilty to selling 10 pipe bombs to an undercover agent, and a subsequent search of his residence uncovered more than three kilograms of marijuana, gun powder, fuses, ammunition, and a loaded .38 caliber revolver. (PSR ¶ 35). Being

sentenced to 66 months in prison did nothing to deter him from then assaulting a fellow inmate and causing serious bodily injury, another serious offense.

Gilmore's history and characteristics also do not weigh in his favor. The PSR outlines Gilmore's entire criminal background, dating back to when he was 18, during which time he has engaged in a series of comparatively minor drug and traffic offenses. (PSR ¶¶ 29-34.) Most notable, however, is the regularity with which he violated the law from age 18-20 and, in some circumstances, violated probation by absconding or committing new crimes.

In support of his motion, Gilmore notes that he had a difficult upbringing, has "tried to improve himself," has worked while in prison, has taken educational courses, has his family's support, and that he has already served a sufficient sentence. (ECF No. 45, Supplemental Brief, PageID.237). The government acknowledges that, like most defendants in this Court, and according to the PSR, Gilmore has experienced many difficulties in his life. (PSR ¶¶ 48-52). The government also credits Gilmore with working and taking classes.

Gilmore ignores, however, that his assault of a fellow inmate is not the only incident he has engaged in while in prison. In addition to the May 1, 2017, incident that gave rise to this case, Gilmore was disciplined three more times, all in 2018, for: phone abuse, fighting with another inmate, and participating in a 3-on-1 fight with other inmates. (Ex. B). These incidents and other factors led the Bureau of Prisons

to give him a "high" PATTERN score (on a scale ranging from "minimum" to "low" to "medium" to "high"), meaning he is considered a high risk of recidivism. (Ex. C).

The § 3553(a) factors weigh against granting Gilmore's motion.

### III.    If the Court were to grant Gilmore's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Gilmore's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

**Conclusion**

Gilmore's motion should be denied.

Respectfully submitted,

Saima Mohsin
Acting United States Attorney

*s/Andrew J. Lievense*
Andrew J. Lievense
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI  48226
andrew.lievense@usdoj.gov
Dated: February 15, 2021                    (313) 226-9665

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2021. I electronically filed the foregoing

paper with the Clerk of the Court using the ECF system, which will send notification

to all counsel of record.

*s/Andrew J. Lievense*
Andrew J. Lievense
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
andrew.lievense@usdoj.gov
(313) 226-9665
