UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                              Case Number 17-20519

v.                                                Honorable David M. Lawson

STEVEN GILMORE,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Steven Gilmore has filed a motion and a supplemental motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Gilmore has served a little more than a month of a 31-month prison sentence for assaulting a prison inmate. That sentence is consecutive to a sentence imposed in 2017 by another judge in this district for a firearm offense, which is now complete. Gilmore argues that a sentence reduction is justified by his medical conditions (history of epileptic seizures, hepatitis C, and a previous drug-related heart attack) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. However, Gilmore is only 27, he previously contracted COVID-19 (and was asymptomatic), and the BOP fully vaccinated him in early February 2021. Because he has not shown that "extraordinary and compelling reasons warrant such a reduction," as section 3582(c)(1)(A)(i) requires, his motion to reduce his sentence will be denied.

I.

When the parties filed their briefs, defendant Steven Gilmore was serving two federal sentences. In 2017, he pleaded guilty to unlawfully possessing a firearm as a convicted felon, and

the Honorable Paul D. Borman sentenced him to 66 months in prison.  *United States. v. Gilmore*, No. 16-20490.  While at the Federal Detention Center in Milan, Michigan, awaiting designation to a Bureau of Prisons facility, Gilmore assaulted an inmate without warning.  The assault left the victim with a broken nose and orbital bone and in need of stitches.  Gilmore subsequently pleaded guilty to assault resulting in serious bodily injury, and on May 1, 2018, this Court sentenced him to 31 months in prison, to run consecutively to his other federal sentence.  He has served his first sentence and began serving his second sentence on February 28, 2021.

The defendant presently is confined at Victorville USP, a high-security facility in California that houses about 1,180 inmates.  Public records of the BOP indicate that the defendant is scheduled to be released from prison on September 21, 2023.  Gilmore is 27 years old.

On August 14, 2020, the defendant submitted a request for compassionate release to the Warden of USP Victorville, citing health concerns and the ongoing coronavirus pandemic.  The Warden denied that request on November 20, 2020.  The defendant filed a *pro se* motion for compassionate release on November 14, 2020, just before the Warden denied his request.  The Court appointed counsel for the defendant, who filed a supplemental brief supporting the defendant's motion.  Thereafter, defense counsel withdrew as the defendant's attorney because he accepted a position as an assistant state prosecuting attorney.

The most recent data disclosed by the BOP indicates that there are six active coronavirus cases among inmates and 10 among staff.  In addition, 500 inmates and 69 staff members previously were diagnosed and now have recovered.  Reports indicate that no inmates or staff have died from the virus.  *See* https://www.bop.gov/coronavirus/.  The BOP also reports that it fully inoculated 328 staff members and 406 inmates at Victorville FCC (not USP).  *Ibid.*  However, the defendant's medical records indicate that he tested positive for COVID-19 in January, fully

recovered, and received two doses of the Moderna Vaccine: the first on January 8, 2021, the second on February 3. Medical Records, ECF No. 50, PageID.272.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Gilmore relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, 984 F.3d 516 (6th Cir. 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 984 F.3d at 518 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at 519-20. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.* However, the defendant still must satisfy the other two requirements, and his "failure to meet any one of

- 4 -

those criteria" will result in the denial of his motion. *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021).

A.

The government argues that this Court may not address Gilmore's motion because he still is serving the first of his two consecutive sentences, which was imposed by another judge. That was true when the government filed its brief, but no longer. Gilmore began serving his second sentence on February 28 of this year.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Gilmore contends that he has several medical conditions that subject him to an elevated risk of complications from the highly-contagious novel coronavirus. He asserts that his history of epileptic seizures, chronic hepatitis C, and previous heart attack provide extraordinary and compelling reasons for his release. The Court disagrees.

In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6. And the defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease,

respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). It is appropriate for the Court to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 984 F.3d at 521.

The pandemic guidelines published by the CDC, which regularly have been updated over the past year with the benefit of ongoing research about the COVID-19 disease, recognize at least nominally several pertinent medical conditions as potential risk factors. *See* CDC Risk Factors: People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 19, 2021). However, none of the factors that the defendant has identified presently are classified as posing either a serious or certain risk of complications from the COVID-19 disease.

Gilmore's preexisting conditions are not recognized by the CDC as among those that increase an individual's risk of severe complications from a COVID-19 infection. First, the CDC does not recognize epilepsy or seizures as conditions that may increase an individual's susceptibility to the virus or to complications from an infection. *People Who Are at Risk for Severe Illness*, Ctrs. for Disease Control & Prevention (Mar. 15, 2020), https://bit.ly/2WBcB16. Second, although the CDC does recognize "liver disease" as a condition that "might" increase one's risk of severe illness from the virus, it does not recognize any form of hepatitis as risk factors. *Ibid.* The CDC identifies "alcohol-related liver disease, nonalcoholic fatty liver disease, and especially cirrhosis (scarring of the liver)" as risk factors, but the defendant does not say that he suffers from any of those conditions. *Ibid.*

The CDC does recognize heart disease, including "heart failure" and "cardiomyopathies" (difficulty pumping blood to the rest of the body), as conditions that increase one's risk of severe illness from COVID-19. *Ibid.* However, although the defendant had a heart attack in 2018, he admits that he does not suffer from a chronic condition; rather, his heart attack resulted from "past drug use." Supp. Mot. CR, ECF No. 45, PageID.233. The defendant's medical records reflect his condition as an "old/remote myocardial infarction" from "illicit drug use." Medical Records, ECF

No. 50, PageID.277. His medical records also reflect that the defendant has "no recurring chest distress" or pain, *ibid.*, and that he suffers from "no acute cardiopulmonary disease." *Id.* at PageID.276.

Moreover, there are compelling reasons to believe that Gilmore should be immune from the virus. First, the defendant already contracted the virus in January 2021, which potentially allowed him to develop antibodies against the virus naturally. Medical Records, 50, PageID.274; *see, e.g.*, *Decline in SARS-CoV-2 Antibodies After Mild Infection Among Frontline Health Care Personnel in a Multistate Hospital Network*, Ctrs. for Disease Control & Prevention (November 27, 2020), https://bit.ly/3lnH79m ("Most persons develop virus-specific antibodies to SARS-CoV-2 after infection; however, the timeline of antibody decline over time is uncertain.").

The defendant apparently was asymptomatic, as he consistently denied suffering from common symptoms like coughing, shortness of breath, muscle pain, fatigue, sore throat, diarrhea, congestion, chills, or loss of taste or smell. Medical Records, ECF No. 50, PageID.269-70 (denying symptoms every day from January 12 through January 21). Medical personnel also found that the defendant's lungs were "clear" and that his "heart size [was] within normal limits." *Id.* at PageID.276. This Court previously found that the possibility of reinfection did not constitute an extraordinary and compelling reason for release where inmates were similarly asymptomatic. *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *5-6 (E.D. Mich. July 17, 2020); *United States v. Fuqua*, No. 13-20066, ECF No. 111 (E.D. Mich. Sept. 22, 2020); *but see United States v. Santmire*, No. 16-20519, ECF No. 56 (E.D. Mich. Sept. 24, 2020) (concluding that defendant satisfied first element after exhibiting fever, weakness, and shortness of breath after being deemed recovered).

Most importantly, the defendant became fully vaccinated on February 3, 2021. Medical Records, ECF No. 50, PageID.272. This vaccination serves as the best-known line of defense against the virus. *Benefits of Getting Vaccinated*, Ctrs. for Disease Control & Prevention (Jan. 5, 2021), https://bit.ly/38KEv0y ("All COVID-19 vaccinations currently available in the United States have been shown to be highly effective at preventing COVID-19 . . . experts believe that getting a COVID-19 vaccine may also help keep [people] from getting seriously ill even if [they] do get COVID-19").

Considering the defendant's youth, lack of high-risk conditions recognized by the CDC, previous and asymptotic COVID-19 infection, and subsequent inoculation, the defendant has failed to demonstrate an extraordinary and compelling reason for his release.

C.

Because the defendant has not demonstrated extraordinary and compelling reasons for release, the Court need not address the section 3553(a) factors. *Tomes*, 990 F.3d at 504 (reiterating that "'district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others'") (quoting *Elias*, 984 F.3d at 519).

III.

Gilmore has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 39, 45) are **DENIED**.

                                                    s/David M. Lawson
                                                    DAVID M. LAWSON
Dated:  April 7, 2021                      United States District Judge